**Philip B. CHAMBERS and Gladys Chambers**

v.

**COLONIAL PIPELINE COMPANY.**

**Civ. A. No. 5041.**

United States District Court
E. D. Tennessee, S. D.

June 25, 1968.

---

**2.** See Senate Report No. 1992, 87th Cong. 2nd Sess.1962.

Philip B. and Gladys Chambers, pro se.

Spears, Moore, Rebman & Williams, Chattanooga, Tenn., for defendant.

## MEMORANDUM

FRANK W. WILSON, District Judge.

The plaintiffs in this lawsuit seek to set aside a judgment entered in an eminent domain action in a state court, to recover a pipeline right-of-way taken and occupied by the defendant in their land, and to recover all damages alleged to have been sustained by them as a result of the wrongful taking of their land. The case is now before the Court upon a motion for summary judgment filed by the defendant pursuant to Rule 56, Federal Rules of Civil Procedure. The record on which the motion is made consists of the original complaint and the exhibits thereto, along with a number of exhibits filed with and identified in the motion for summary judgment. A detailed response to the motion has now been filed by the plaintiffs, who are representing themselves in this action.

The record in this case reflects that the parties have been involved in prolonged and difficult litigation extending back to 1962. From the allegations in the complaint and the exhibits filed in the case, the following matters appeared to be undisputed: The plaintiffs, Mr. and Mrs. Chambers, sometimes hereinafter referred to as the "landowners," are the owners of a tract of land located in Bradley County, Tennessee, consisting of approximatly 89 acres. Defendant Colonial Pipeline Company, sometimes hereinafter referred to merely as "Pipeline Company," is a private corporation engaged generally in the construction, ownership and operation of pipeline for the interstate movement of petroleum products. In October of 1962 the Pipeline Company, desiring to obtain a right-of-way across Mr. and Mrs. Chambers' land for the laying of a pipeline, made an offer to them for the purchase of the desired right-of-way, but the offer was declined. The Pipeline Company thereupon filed a lawsuit in the Circuit Court for Bradley County, Tennessee, seeking to acquire the right-of-way by means of condemnation, this lawsuit being styled "Colonial Pipeline Company v.

Philip B. Chambers and wife, Gladys Chambers, Docket No. 2148." The declaration in that case alleged that Colonial Pipeline Company was authorized to maintain the lawsuit under the eminent domain laws of the State of Tennessee (§ 65–2801 and § 23–1401 *et seq.*, Tennessee Code Annotated). It further alleged that it sought to acquire a described right-of-way across the land of Mr. and Mrs. Chambers for the purpose of laying, maintaining and operating an oil pipeline and it requested that a judgment awarding the right-of-way and determining the issue of just compensation due unto the landowners. The landowners, who were at that time represented by retained legal counsel, placed all matters in issue, among other matters denying that Colonial Pipeline Company had the right to exercise the power of eminent domain as alleged. Upon February 14, 1963, an order was entered sustaining the right of Colonial Pipeline Company to maintain the action, the order being filed as of May 14, 1963, but stating that it was entered *nunc pro tunc*. A jury of view was then ordered to determine the issue of just compensation. Meanwhile, Mr. and Mrs. Chambers had discharged their original legal counsel and engaged other legal counsel. The jury of view made its report, assessing the total compensation and damages due unto the landowners to be in the sum of $1200.00. On May 14, 1963, an order was entered by the Court granting the landowners an appeal from the award of the jury of view and granting a writ of possession unto the Pipeline Company.

At the time the lawsuit came on for trial upon the landowners' appeal from the verdict of the jury of view, matters took a turbulent turn. It appears that at this point Mrs. Chambers took over from her attorney her own representation and so vigorously and so insistently pursued the assertion of her contention that the Pipeline Company was without authority to maintain an eminent domain action that the Court was unable to proceed with the trial. The entry of an order of contempt against Mrs. Chambers and a resetting of the trial restored judicial order for the time. However, when the case again came on for trial it appears that the landowners, for a second time in the lawsuit, discharged their attorney and undertook their own representation, which they have been doing since that time. Upon the day of the trial, the landowners appeared but declined to proceed with the trial, again insisting that the entire proceedings had been in derogation of all of their rights. This resulted in an order going down upon January 7, 1965, dismissing the landowners' appeal from the verdict of the jury of view, affirming the jury of view award in the sum of $1200.00, and vesting title to the right-of-way in Colonial Pipeline Company.

Although the landowners attempted to appeal this judgment, the record reflects that this judgment became final without a timely appeal having been perfected in accordance with the law. The trial court record appears still to be lodged in the storage room of the Railway Express Agency, with the landowners and the Tennessee Supreme Court Clerk in a standoff as to who owes the freight.

More recently, it appears that the battle has shifted to another front. One of the attorneys for the landowners has sought compensation for his legal services to the time of his discharge. The Trial Court awarded him a portion of the recovery as compensation for his services to the time of his discharge. On appeal by the landowners, this award was affirmed by the Tennessee Court of Appeals upon January 24, 1968. It appears that the landowners may have since sought certiorari to the Tennessee Supreme Court from this decision, but the record does not reflect whether they have succeeded in getting that Court to look into the matter of the dispute between them and their former attorney.

In the interest of a complete statement of the undisputed matters in the record, there is one other phase of the state court litigation between these parties that should be recited. Upon the

filing of the state court action by the Pipeline Company, the land owners attempted to remove that action from the Circuit Court for Bradley County, Tennessee, to this court by filing a removal petition in this court upon January 17, 1963. See Colonial Pipeline Company v. Philip B. Chambers and wife, Gladys Chambers, Civil Action No. 4013. By order entered on March 8, 1963, the case was remanded to the state court for lack of jurisdiction in this court.

■ It is upon the foregoing state of the record that the present motion for summary judgment must be judged. It clearly appears that all of the matters sought to be litigated in the lawsuit now pending in this court have either been previously litigated in the state court action between the same parties or were subject to litigation in that action. The landowners remain very earnestly insistent that the Pipeline Company was without authority to maintain the eminent domain action in the state court, that the Trial Court acted without authority in entering *nunc pro tunc* an interlocutory order ruling to the contrary during the time the case was removed to the federal court, that the Pipeline Company must negotiate for the purchase of the land, that the landowners have not been awarded just compensation, that they are entitled to damages for the unlawful taking of their land, that they are entitled to have their land restored to them and the pipeline removed, and that numerous errors were made in the course of the state court action. However, under principles of *res judicata* these are all matters which either were previously litigated in the state court action or were properly subject to be there litigated. As stated in 30A Am.Jur., "Judgments," § 363:

"A final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand and cause of action."

■■ Moreover, the doctrine of *res judicata* extends not only to matters previously litigated, but also to matters which, although not litigated, were properly subject to litigation in the former action. A party cannot avoid the effects of *res judicata* by splitting a cause of action or failing to assert matters in the former litigation which were properly subject to litigation there. The rule in this regard is stated as follows:

"The phase of the doctrine of *res judicata* precluding subsequent litigation of the same cause of action is much broader in its application than a determination of the questions involved in the prior action; the conclusiveness of the judgment in such case extends not only to matters actually determined, but also to other matters which could properly have been determined in the prior action." 30A Am.Jur. § 372.

The doctrine of *res judicata* exists in all civilized nations. Its basis is clear and that is that there must be an end to litigation. Without it, litigation would be endless.

This litigation, too, must at some point end. It appears from the undisputed record that this is such a point. The motion for summary judgment will be sustained and an order entered dismissing this lawsuit.